**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION, DAYTON, OHIO**

| | |
|---|---|
| MICHAEL SKILWIES, | CASE NO.: 3:23-cv-146 |
|     Plaintiff, | JUDGE: Thomas M. Rose |
| v. | MAGISTRATE: Peter B. Silvain, Jr. |
| CITY OF HUBER HEIGHTS, OHIO, ET AL., | |
|     Defendants. | |

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff moves this Court for a preliminary injunction. Plaintiff asks the Court to prohibit Defendants from enforcing their cease and desist order against Plaintiff pending the outcome of this litigation. Grounds for this motion, as set forth in the accompanying memorandum, are that Plaintiff will be continuously and irreparably harmed, that Plaintiff is likely to succeed on the merits of his claim, and that an injunction would serve the public interest.

For 12 years Mr. Skilwies has operated his business, repairing diesel trucks and heavy equipment, employing his one-person workforce, providing for his family, and paying his taxes like his fellow citizens. Over the years, as he has looked around his property location, Mr. Skilwies has seen similarly-situated businesses also operating.

Now, with a swift stroke of a pen, Defendants have threatened to destroy Mr. Skilwies' ability to maintain his lawful business. In contrast, neighboring businesses face no such governmental intrusion.

Mr. Skilwies asks the Court to intervene to preserve the status quo prior to the Defendants'

suspected unconstitutional actions. Since Defendants reacted to no actual harm Mr. Skilwies' business has imposed on his neighbors or the environment, this injunction fulfills the public interest under *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), as well as all other elements to obtain the preliminary injunction, as established in the attached memorandum in support.

Respectfully Submitted,
DOUCET CO., L.P.A.

*/s/ Caleb J. Johnson*
Caleb J. Johnson (0102085)
655 Metro Place South, Suite 600
Dublin, OH 43017
PH: (614) 221-9800
Fax: (818) 638-5548
caleb@doucet.law
*Attorney for Plaintiff Michael Skilwies*

## MEMORANDUM

### I.    INTRODUCTION

Plaintiff Michael Skilwies ("Plaintiff") owns approximately five acres of land at 9416 Taylorsville Road, Huber Heights, Ohio 45424. (*See* Complaint, ¶ 19) Plaintiff, and his wife and children reside at this address. (*See* Complaint, ¶ 20) While Plaintiff's property is zoned for agricultural and low-density residential use, the surrounding area includes many industrial facilities. (*See* Complaint, ¶¶ 21-24)

For approximately the past twelve years, Plaintiff has operated a diesel truck and heavy equipment repair business on his property. (*See* Complaint, ¶ 25) This is Plaintiff's sole employment. (*See* Complaint, ¶ 26) Also, many of Plaintiff's neighbors operate businesses on their properties. (*See* Complaint, ¶¶ 29-34) Some of Plaintiff's neighbors have received re-zoning or use-variances for businesses run on their property. (*See* Complaint, ¶ 35) However, it does not appear that any other of Plaintiff's neighbors have been required to obtain permits, use-variances, or re-zoning approval to operate their businesses on their respective properties. (*See* Complaint, ¶ 36) Rather, it is only Plaintiff's business that has been singled out and arbitrarily denied for re-zoning or use-variance. (*See* Complaint, ¶ 37)

In 2021, Plaintiff was contacted by the City of Huber Heights ("the City") and told that his business operation is a non-farm related business, and, thus, does not conform to City zoning regulations. (*See* Complaint, ¶ 41) Thereafter, based on the recommendation of the City, in preparation for applying for a use-variance and re-zoning, Plaintiff spent approximately $27,000.00 to widen and repave his driveway. (*See* Complaint, ¶ 43) Plaintiff then applied for a use-variance. (*See* Complaint, ¶ 44) This request was denied by the City's Board of Zoning Appeals on October 6, 2021. (*See* Complaint, ¶ 45)

On March 28, 2022, Plaintiff filed an application for a proposed lot split and re-zoning. (*See* Complaint, ¶ 46) This application proposed that approximately 3.55 acres of Plaintiff's property be re-zoned from "agricultural" to "planned industrial," which would allow Plaintiff to maintain his diesel truck and heavy equipment repair business on his property. (*See* Complaint, ¶ 47). The remainder of the 5 acres would be zoned residential. (*See* Complaint, ¶ 48) Plaintiff attended a public hearing on July 11, 2022, where the City Council reviewed his application for re-zoning. Plaintiff made statements at this hearing. (*See* Complaint, ¶ 49) A staff member from the City Planning Commission presented at this hearing and noted that the City Planning Commission recommended that Plaintiff's re-zoning application be denied due to the following: (1) no public water or sewer available on the site, which may lead to well water pollution; (2) the proposed lot split is not consistent with the comprehensive plan that the area should remain agricultural and low density residential; (3) the business is a nuisance due to excessive noise, fumes, odors, etc.; and (4) additional concerns about the potential contamination of drinking water wells due to fluid leaks or spills. (*See* Complaint, ¶ 50)

However, the staff member from the City Planning Commission did not present any evidence that Plaintiff's business had or would cause the stated concerns to manifest. (*See* Complaint, ¶ 51) Of significance, during this hearing, the City Planning Commission staff member noted that the City's Board of Zoning Appeals regularly approves variance requests that *do not conform* to the City's zoning ordinance. (*See* Complaint, ¶ 52) Despite this, Plaintiff's re-zoning application was voted down by the City Council. (*See* Complaint, ¶ 54)

After Plaintiff's re-zoning application was voted down, a proposal to the City Council was submitted, by the City Planner, to amend the current zoning ordinance to allow for automotive and vehicle repair on properties zoned agricultural. (*See* Complaint, ¶ 55) Approval of this ordinance

-2-

amendment by the City Council would have allowed Plaintiff to apply for a special use-variance for his property. That would have allowed Plaintiff to continue operation of his business. (*See* Complaint, ¶ 56) The proposed amendment was voted down by the City Council on February 13, 2023. (*See* Complaint, ¶ 59) Plaintiff was not in attendance at the City Council meeting on February 13, 2023, because Plaintiff was initially told that the City Council vote on the proposed ordinance amendment would take place in March of 2023. (*See* Complaint, ¶¶ 60-61) Furthermore, Plaintiff was never personally notified of the date and time of the final City Council vote. (*See* Complaint, ¶ 63) The City did not provide Plaintiff with an explanation as to why his requests for re-zoning and use-variance were denied. (*See* Complaint, ¶ 64)

Plaintiff's business does not pose a risk of ground water contamination or any other environmental hazards. (*See* Complaint, ¶ 65) Rather, the only work performed on diesel trucks and heavy equipment at Plaintiff's property is major engine or transmission repair work. Plaintiff does not perform oil changes or regular truck maintenance work on his property. (*See* Complaint, ¶¶ 66-67) Even more, all work Plaintiff performs on diesel trucks and heavy equipment at his property is done indoors on a concrete slab, which ensures that pollutants or fluids do not seep into the ground. (*See* Complaint, ¶ 68) All fluids are caught in sealed drain pans and then pumped into a tank. A waste oil company then periodically comes to drain the tank and haul away the waste. This mitigates any concerns of ground or well water contamination. (*See* Complaint, ¶ 69)

Until recently, Plaintiff has never received any complaints from neighbors or the City concerning the operation of his business. (*See* Complaint, ¶ 70) Also, any noise or annoyance of which a neighbor has complained do not emanate from the diesel trucks or heavy equipment from Plaintiff's business. (*See* Complaint, ¶ 71) Further, Plaintiff's business fits within the general scheme of the area because Plaintiff's business is similarly situated to other businesses, industrial

-3-

or otherwise, within the immediate area. (*See* Complaint, ¶ 72)

On February 16, 2023, the City of Huber Heights sent Plaintiff a letter (*See* Exhibit A, attached) that ordered Plaintiff to cease and desist operation of his business. (*See* Complaint, ¶ 73) The letter notes that Plaintiff has exhausted all available administrative remedies. (*See* Complaint, ¶ 74) Also, the letter gives Plaintiff 120 days, commencing March 1, 2023, to wind down his business. (*See* Complaint, ¶ 75)

Plaintiff's Complaint seeks redress for the City's violations of Plaintiff's Fifth and Fourteenth Amendment rights, and injunctive relief. (*See* Complaint, ¶¶ 78-104)

## II.  LEGAL STANDARD FOR PRELIMINARY INJUNCTION IN CONSTITUTIONAL CASES

To obtain a preliminary injunction in federal court, the movant has the burden of establishing (1) the likelihood of irreparable harm to plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the request for relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *citing Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), *citing In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). However, it is well established that in cases of alleged constitutional violations, the four-part test normally applied to preliminary injunctions logically reduces itself to one factor, and the likelihood of success on the merits factor is seminal. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998), *citing Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), *cert. denied*, 519 U.S. 807 (1996); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (even temporary loss of constitutional rights establishes irreparable injury.); *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079

(6th Cir. 1994) (public interest always lies with protection of a party's constitutional rights.)
Further, "[p]reliminary injunctions in constitutional cases often turn to the likelihood of success
on the merits, usually making it unnecessary to dwell on the remaining three factors." *Roberts v.
Neace*, 958 F.3d 409, 416 (6th Cir. 2020), *citing City of Pontiac Retired Emps. Ass'n v. Schimmel*,
751 F.3d 427, 430 (6th Cir. 2014).

Thus, the crucial inquiry for the Court is whether Defendants' actions against Plaintiff are
likely to be found unconstitutional. Accordingly, Plaintiff turns to the likelihood of success on the
merits. Plaintiff need not prove his whole case to show a likelihood of success on the merits. If
the balance of hardships tips in favor of Plaintiff, then Plaintiff must only raise "questions going
to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for
litigation and thus for a more deliberative investigation." *Stryker Emp. Co., Ltd. Liab. Co. v. Abbas*,
60 F.4th 372, 385 (6th Cir. 2023) (citation omitted).

## III.   SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Fourteenth Amendment Equal Protection Standard

"[T]he purpose of the equal protection clause of the fourteenth amendment is to secure to
every person within the State's jurisdiction against intentional and arbitrary discrimination,
whether occasioned by express terms of a statute or by its improper execution through duly
constituted agents." *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060
(2000). "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that
the state treated the plaintiff differently from others similarly situated and that there is no rational
basis for such difference in treatment." *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F. Supp.
3d 1028, 1044 (E.D.Mich.2018), *quoting Warren v. City of Athens, Ohio*, 411 F.3d 697, 710 (6th
Cir. 2005), *citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d

1060 (2000). "Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational." *Trihealth, Inc. v. Bd. of Commrs.*, 430 F.3d 783, 790 (6th Cir. 2005).

**1. Plaintiff's Property And Business Are Similarly-Situated To Other Properties And Businesses In The Area.**

Under a claim for equal protection violations, the plaintiff and the persons or entities to which the plaintiff is compared must be alike "in all relevant respects." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022), *citing Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992). However, "the court should 'not demand exact correlation, but should instead seek relevant similarity.'" *Rondigo, L.L.C. v. Casco Twp.*, 330 F.App'x 511, 520 (6th Cir. 2009), *quoting Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

In *Andrews v. City of Mentor*, the Sixth Circuit Court held that properties were similarly situated where the plats for two developments were "materially identical" to each other. *Andrews v. City of Mentor*, 11 F.4th 462, 474 (6th Cir. 2021). In that case, the court noted that each property consisted of roughly the same acreage, contained similar numbers of residential units, and had the same number of access points. *Id.* Conversely, in *Baskin v. Bath Twp. Bd. of Zoning Appeals*, the Sixth Circuit Court held that entities were not similarly situated where one entity sought zoning approval to build towers as high as 120 feet, while another entity sought zoning approval to build towers less than 50 feet high. *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 6th Cir. Nos. 95-3042/95-3881, 1996 U.S. App. LEXIS 30686, at *15 (Nov. 21, 1996). Moreover, in *Baskin*, the Court noted that the plaintiff had failed to allege that similarly-situated entities had received the same zoning permission that plaintiff sought. *Id.* at ¶ 16. Rather, the plaintiff sought to compare its proposed amateur radio operation towers to those of a cable company. *Id.* The Court stated that this comparison was without merit because the plaintiff failed to demonstrate that the towers would be

similar in height and design, or that the property on which the plaintiff's proposed tower would be built was similar to the property on which a cable company's tower had been erected. *Id*. Also, in *Taylor Acquisitions, L.L.C. v. City of Taylor*, the plaintiff's equal protection claim was dismissed because the plaintiff, a developer, failed to specify how its development company was similarly-situated to other development companies. *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F.App'x 826, 836 (6th Cir.2009).

Here, Plaintiff has specified how his property and business are similarly situated to those that have received favorable zoning treatment or use-variances. Plaintiff owns a five-acre parcel of land on which he operates a diesel truck and heavy equipment repair business. Plaintiff's requests for a use-variance and re-zoning have been denied by the City of Huber Heights. However, two (and possibly more) of Plaintiff's neighbors, who own lots of similar size and character to Plaintiff's, have received either use-variance or re-zoning approval from the City for their businesses. Moreover, it appears that the City continues to selectively allow many of Plaintiff's neighbors to operate businesses on their properties in violation of the City's zoning ordinance. Plaintiff's business is the only one that has been singled out for adverse treatment.

As in *Andrews v. City of Mentor*, Supra, Plaintiff's property is roughly the same acreage size, has the same number of access points, and is otherwise identical to the properties that have received use-variance or re-zoning approval. This is also true of the plots on which Plaintiff's neighbors operate businesses in violation of the City's zoning strictures. Moreover, Plaintiff's business is similarly situated to other businesses within the area because Plaintiff's business, like other businesses in the immediate area, includes vehicle repair work. Furthermore, Plaintiff's business is an industrial enterprise, which is the same kind of enterprise as a local directional drilling company, which received a favorable zoning determination from the City. Also, Plaintiff's

business is similarly situated to his neighbor's bed-and-breakfast business because both businesses allow clients to bring their vehicles onto their respective properties, and both businesses include large implements (*i.e.*, a yurt structure, compared with large trucks). Further still, unlike the businesses in *Baskin v. Bath Twp. Bd. of Zoning Appeals,* Plaintiff's business is similar to other businesses in the area because the implements of Plaintiff's business are akin to other structures and implements on Plaintiff's neighbors' properties (*e.g.*, outbuildings, yurt structures, commercial dumpsters, multiple vehicles parked on land, *etc.*). Additionally, unlike *Baskin*, Plaintiff here has alleged sufficient, multiple examples, which demonstrate, at the very least, there is an issue of material fact as to whether Plaintiff's business and land are similarly-situated to those on surrounding plots. Also, unlike *Taylor Acquisitions, L.L.C. v. City of Taylor,* Plaintiff has specifically alleged and shown that his property and business are similarly-situated to his neighbors.

Thus, this Court should not demand exact correlation, but should instead seek relevant similarity between Plaintiff's land and business and those of Plaintiff's neighbors. Therefore, this Court should find that Plaintiff's property and business are similarly situated to those in the surrounding area.

## 2. Defendants' Actions Are Not Rational Because Defendants' Treated Similarly Situated Persons Disparately.

The purpose of the Equal Protection Clause is to ensure that similarly-situated people are treated alike. *Dog Pound, LLC v. City of Monroe*, 558 F.App'x 589, 592 (6th Cir. 2014), *citing Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational." *Trihealth, Inc. v. Bd. of Commrs.*, 430 F.3d 783, 790 (6th Cir. 2005).

In *Willowbrook v. Olech*, the United States Supreme Court held that a village may not have

-8-

had a rational basis to require that a homeowner provide "a 33-foot easement as a condition of connecting her property to the municipal water supply," while only requiring a 15-foot easement from other similarly situated property owners. *Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000). The Court stated that the village's actions could be construed as irrational and wholly arbitrary, and were "sufficient to state a claim under traditional equal protection analysis." *Id*. Further, in *Bannum, Inc. v. Louisville*, the Sixth Circuit Court upheld the lower court's decision to grant injunctive relief where the plaintiff challenged the constitutionality of a city zoning ordinance. The ordinance required plaintiff's group home facility to obtain a special use permit, but the city did not require the same for other similarly situated facilities. *Bannum, Inc. v. Louisville*, 958 F.2d 1354, 1364 (6th Cir. 1992). The court held that the city had no rational basis for its decision. *Id*. Also, in *Paterek v. Village of Armada*, the Sixth Circuit Court held that, for purposes of an equal protections claim, a jury could reasonably find that a village's treatment of the plaintiff was not anchored by a rational basis. *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015). In that case, the plaintiff offered several examples where the village allowed similarly-situated businesses to operate without obtaining the requisite certificates of occupancy. However, plaintiff was made to obtain a certificate before he was allowed to operate his business. *Id*. Further still, in *Paterek*, the plaintiff was treated disparately from other similarly-situated businesses because the village arbitrarily allowed other businesses to operate, even though some of the businesses were selectively issued certificates of occupancy after failed inspections, or were not subjected to inspection at all before being granted the requisite certificates. *Id*.

Here, the City does not have a rational basis for denying Plaintiff's applications for use-variance and re-zoning. This is particularly true because the City irrationally and arbitrarily denied Plaintiff's requests, while granting the same requests to similarly situated businesses. Moreover,

as in *Paterek*, Plaintiff here has been denied a use-variance and re-zoning, while other similarly situated entities have either been granted re-zoning or use-variances. Even more, the City continues to arbitrarily and selectively allow other businesses to operate without obtaining the requisite variances or re-zoning, while disallowing Plaintiff to do the same. Also, on July 11, 2022, a City Planning Commission staff member, presenting to the City Council on this issue, stated that the City's Board of Zoning Appeals regularly approves variance requests that *do not conform* to the City's zoning ordinance. However, Plaintiff was denied his requests for use-variance and re-zoning. Further still, the City Planning Commission staff member did not present any evidence that the stated concerns in allowing Plaintiff's applications for re-zoning or use-variance had or would manifest.

Therefore, this Court should find that the City of Huber Heights' decision to deny Plaintiff his re-zoning and use-variance requests are arbitrary, and are not rationally related to a legitimate government interest, and that Plaintiff was treated disparately from other similarly-situated entities.

**B.  Fourteenth Amendment Substantive Due Process Standard**

"Substantive due process, among other things, protects citizens from being subject to 'arbitrary or irrational zoning decisions.'" *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015), *citing Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). To succeed on a substantive due process claim, a plaintiff must show the following: "(1) a constitutionally protected property or liberty interest exists; and (2) the constitutionally protected interest has been deprived through arbitrary and capricious actions." *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir.2015), *citing Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008).

**1.  Defendants' Actions Burden Plaintiff's Fundamental Right To Engage In The Common Occupations Of Life.**

The Supreme Court of the United States has held that the Fourteenth Amendment includes the fundamental right to engage in any of the common occupations of life. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). This right "may not be arbitrarily denied by the State." *Bright v. Gallia Cty.*, 753 F.3d 639, 658 (6th Cir. 2014), *quoting Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989). Moreover, in *Bright v. Gallia County*, the Sixth Circuit Court quoted the following: "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clauses of the Fourteenth Amendment." *Bright v. Gallia Cty.*, 753 F.3d 639, 658 (6th Cir.2014), *quoting Schware v. Board of Bar Exam. Of N. Mex.*, 353 U.S. 232, 238-39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957), *citing Dent v. West Virginia*, 129 U.S. 114, 9 S. Ct. 231, 32 L. Ed. 623 (1889).

Here, Defendants' violations of the Due Process and Equal Protection Clauses has effectively denied Plaintiff his fundamental right to carry on his occupation as a diesel truck and heavy equipment mechanic. Defendants' actions seek to completely prohibit Plaintiff from operating his business, which is Plaintiff's sole employment, on Plaintiff's property. By completely prohibiting Plaintiff from engaging in his business, the City has effectively deprived Plaintiff of his fundamental, constitutional right to engage in the common occupations of life.

Therefore, this Court should find that the City of Huber Heights' decision to deny Plaintiff his re-zoning and use-variance requests is an untenable rejection of Plaintiff's constitutional right to engage a common occupation of life.

## 2. Defendants' Actions Were Arbitrary and Capricious, And Have No Substantial Relation To Public Health, Morals, Safety Or Welfare.

A court should "not interfere with local zoning decisions unless the locality's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial

-11-

relation to the public health, the public morals, the public safety or the public welfare.'" *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008), *quoting Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005), *quoting Nectow v. City of Cambridge*, 277 U.S. 183, 187-88, 48 S. Ct. 447, 72 L. Ed. 842 (1928). Moreover, "[c]itizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Tollbrook, LLC v. City of Troy*, 774 F.App'x 929, 933 (6th Cir. 2019), quoting *Braun v. Ann Arbor Charter Twp.* at 573.

The City's zoning and use-variance decisions in this case are wholly arbitrary and irrational. Not only has the City selectively engaged in approving use-variances and re-zoning for some, while denying them to Plaintiff, but the City continues to selectively and arbitrarily enforce its own zoning ordinance.

As discussed, in *Paterek v. Village of Armada*, the Sixth Circuit Court held that a jury could reasonably find that a village's treatment of the plaintiff was not anchored by a rational basis. *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015). There, plaintiff was made to obtain a certificate before he was allowed to operate his business. *Id*. Further still, the plaintiff was treated disparately from other similarly-situated businesses because the village arbitrarily allowed other businesses to operate, even though some of the businesses were selectively issued certificates of occupancy after failed inspections, or were not subjected to inspection at all before being granted the requisite certificates. *Id*. The court held that these facts created issues of material fact as to whether the village's actions were arbitrary and capricious. *Id.* at 648. Conversely, in *Braun v. Ann Arbor Charter Twp.*, the Sixth Circuit Court held that a localities zoning decision was not arbitrary and capricious. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008). However, the reasons for this decision are totally distinct from the facts of the instant case. That is, in *Braun*, the court noted that the township had justified its determination to disallow re-zoning of plaintiff's

-12-

property because the township actually provided the plaintiff with reasons as to why the re-zoning application was denied. *Id.* Such reasons included increased public costs and concerns for public safety. *Id*.

Here, as in *Paterek v. Village of Armada*, the City's decision to selectively deny Plaintiff's requests for use-variance and re-zoning is arbitrary and capricious because the City approved the same requests for similarly-situated businesses. Moreover, unlike *Braun*, the City here did not provide Plaintiff with any reasons as to why Plaintiff's use-variance and re-zoning requests were denied. Further still, the arbitrary and capricious nature of the City's decision in this case are glaringly apparent because the City's own employee admitted that the City regularly approves use-variances for property owners where the requisite parameters for approval of such use-variances are unmet.

Therefore, this Court should find that the City of Huber Heights' decisions to deny Plaintiff his re-zoning and use-variance requests were arbitrary and capricious, and have no connection to the health, safety, welfare or morals of the City.

## C.  Fourteenth Amendment Procedural Due Process Standard

"To establish a due process violation in a Section 1983 claim, 'plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest…, (2) that they were deprived of this protected interest…, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.'" *Bauss v. Plymouth Twp.*, 233 F.App'x 490, 496 (6th Cir. 2007), quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000) (citation omitted). Further, at its root, the Due Process Clause requires notice and opportunity to be heard before a person is deprived of a property interest. *Wedgewood Ltd. partnership I v. Twp. of Liberty*, 610 F.3d 340, 354 (6th Cir. 2010).

-13-

Here, Plaintiff has shown he has a protected property interest in continuing operation of his business, and that Plaintiff will be deprived of this protected interest. Thus, the following discussion turns to whether Plaintiff was afforded adequate procedural due process rights by the City.

1. **Plaintiff Was Denied His Procedural Due Process Rights Because The Defendants Failed To Provide Him With Notice Or An Opportunity To Be Heard Prior To The City's Vote On Its Zoning Ordinance Amendment.**

The Due Process Clause, at the very least, requires notice and an opportunity to be heard before a person is deprived of a property interest. *Wedgewood* at 354. In *Wedgewood*, the Sixth Circuit Court held that the plaintiff was denied his procedural due process rights where a township approved new zoning instructions before it provided the plaintiff with notice or an opportunity to be heard. *Wedgewood* at 344. There, the Court reasoned that *"*governmental determinations of a general nature that affect all equally do not give rise to a [Constitutional] due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered." *Wedgewood* at 354, *quoting Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991). In *Wedgewood*, the Court held that the plaintiff was denied due process because the record showed that approval of the new zoning instructions was directed at the plaintiff specifically, and the plaintiff was not provided with notice or a hearing prior to the enactment of the new instructions. *Wedgewood* at 354. Likewise, in *Nasierowski*, the Sixth Circuit Court held that the plaintiff was unjustly denied notice and an opportunity to be heard where the city voted on a proposed zoning amendment that specifically targeted the plaintiff without providing such notice and opportunity to be heard. *Nasierowski* at 896.

Here, after Plaintiff's re-zoning application was voted down, a proposal to the City Council was submitted, by the City Planner, to amend the City's current zoning ordinance. Approval of

-14-

this ordinance amendment by the City Council would have allowed Plaintiff to apply for a special use-variance for his property, which would have allowed Plaintiff to continue operation of his business. The City Council voted the amendment down on February 13, 2023. However, Plaintiff was not in attendance at the City Council meeting on February 13, 2023, because Defendants initially told Plaintiff that the City Council vote on the proposed ordinance amendment would take place in March of 2023. Furthermore, Plaintiff was never personally notified of the date and time of the final City Council vote. Moreover, as in *Wedgewood* and *Nasierowski*, Plaintiff had a significant stake in the outcome of the City Council's vote on the proposed zoning ordinance amendment because approval of this amendment would have allowed Plaintiff to continue operating his business. Further still, the zoning ordinance amendment only affected those citizens, such as Plaintiff, who repair vehicles on their properties, and does not affect business operations generally.

Therefore, this Court should find that the City of Huber Heights denied Plaintiff his procedural due process rights because Plaintiff was not provided with notice or opportunity to be heard prior to the City Council's vote on the zoning ordinance amendment.

### D.  Fifth Amendment Regulatory Takings Standard

Here, government action has deprived Plaintiff of his property, but not to the point it has been rendered valueless. In such a scenario, the United States Supreme Court uses a balancing test to examine whether government action has gone too far and, thus, amounts to a regulatory taking of property. *Tennessee Scrap Recyclers Assn. v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009). The applicable balancing test is found in *Penn Central Transportation Co. v. City of New York*. There, the Supreme Court identified several factors: "(1) the economic impact of the regulation [on the claimant]; (2) the extent to which the regulation has interfered with distinct investment-backed

expectations; and (3) the character of the governmental action." *Tennessee Scrap Recyclers Assn.* at 455, *quoting Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

1. **The City's Denial of Plaintiff's Use-Variance And Re-Zoning Applications Will Have An Inordinate Economic Impact On Plaintiff**

In *Tennessee Scrap Recyclers Assn.,* the plaintiffs, scrap metal dealers, sought a preliminary injunction to enjoin enforcement of a city ordinance that required them to "tag and hold" scrap metal for a period of ten days before re-selling the metal. *Tennessee Scrap Recyclers Assn.* at 446. The court held that the first element of the Penn Central Test was not satisfied because the plaintiffs had failed to demonstrate that the ordinance would have a severe economic impact on the dealers. *Id.* at 456. The court stated that the business risks posed by the ordinance were, at best, speculative. *Id.* Moreover, the court noted that the arguable diminution in value of the scrap metal over the ten-day holding period was insufficient to satisfy the required element. *Id.*

Here, unlike *Tennessee Scrap Recyclers Assn.,* the harm to Plaintiff is not speculative. Rather, the City's denial of Plaintiff's use-variance and re-zoning applications will cause Plaintiff to actually lose his business, which is his sole employment and his only means of providing for his family. Moreover, Plaintiff's impending loss of his business is not merely a concern of diminution in the value of his business or property. Rather, the City's actions threaten to completely quash Plaintiff's business, and any relevant use to which Plaintiff seeks to put his property.

Therefore, the Court should find that the first factor of the Penn Central Test has been met, and that Plaintiff will suffer an indefensible economic impact.

2. **The City's Denial Of Plaintiff's Use-Variance And Re-Zoning Applications Has Greatly Interfered With Plaintiff's Distinct Investment-Backed Expectations.**

A Fifth Amendment taking may be found, regardless of whether a property owner knows of a particular zoning circumscription at the time they acquired the property, or began using the property in a way that violates a zoning ordinance. *Palazzolo v. Rhode Island*, 533 U.S. 606, 627, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). To disallow the finding of a taking under these circumstances would be to allow a local government to, through the issuance of even an extreme or unreasonable zoning decision, "put and expiration date on the Takings Clause." *Id*.

In *Boice v. Vill. of Ottawa Hills*, the Sixth Circuit Court held that the trial court had erred in holding that a regulatory taking had not occurred. *Boice v. Village of Ottawa Hills*, 6th Dist. Lucas No. L-06-1208, 2007-Ohio-4471, ¶ 35. In that case, the appellant argued that enforcement of a city's zoning ordinance and denial of appellant's variance request reduced the value of appellant's parcel of land from $190,000.00 to $38,000.00. *Id.* at ¶ 34.

Here, according to *Palazzolo*, whether Plaintiff knew at the time he began operating his business that such operation violated the City's zoning ordinance is irrelevant.  This case turns on the arbitrary and capricious nature of the City's denial of Plaintiff's requests for use-variance and re-zoning, and the City's selective, irrational, and arbitrary enforcement of its zoning ordinance. Such decisions by the City are unreasonable and should not be allowed to usurp Plaintiff's claim under the takings clause of the fifth amendment. Moreover, as in *Boice*, Plaintiff has invested in the operation of his business on his property for the past 12 years. The most recent of Plaintiff's business expenditures came at the recommendation of the City. That is, at the behest of the City, Plaintiff spent approximately $27,000.00 to widen and repave his driveway in preparation for applying for a use-variance and re-zoning. Further, over many years, Plaintiff has invested untold sums of money and man-hours into the development and operation of his business. Plaintiff did this while the City stood by in tacit approval for approximately 10 years. Now, the City seeks to

-17-

completely shut Plaintiff's business down.

Therefore, the Court should find that the second factor of the Penn Central Test has been met, and that the City has unlawfully interfered with Plaintiff's distinct investment-backed expectations.

**3. The Character Of The City's Governmental Action Bears No Relationship To Health, Safety, Morals or General Welfare.**

In *Penn Cent. Transp. Co.*, the United States Supreme Court indicated that, where the character of governmental action is reasonably concluded to be motivated by concern for the health, safety, morals, or general welfare, a takings has not occurred. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 125, 98 S. Ct. 2646, 57 L.Ed.2d 631 (1978).

Here, it has been demonstrated that the City's denial of Plaintiff's use-variance and re-zoning applications *do not* bear any relation to a legitimate government interest. This is demonstrated by the fact that the City did not provide any evidence at the City Council hearings that the stated concerns ostensibly posed by Plaintiff's business have or will manifest. Indeed, Plaintiff has operated his business for the past twelve years without incident, and it was only until recently that the City took notice of Plaintiff's business operation. Moreover, the City has not provided Plaintiff with any reasons as to why Plaintiff's application for use-variance and re-zoning were denied. Further still, a City Planning Commission staff member noted (at a City Council meeting) that the City's Board of Zoning Appeals regularly approves variance requests that *do not conform* to the City's zoning ordinance. Finally, several similarly-situated businesses have been approved for use-variances or re-zoning, and the City has turned a blind eye to other business operations that have not obtained the requisite approval from the City. It is only Plaintiff's business that has been singled out for adverse treatment.

Therefore, the Court should find that the third factor of the Penn Central Test has been met,

and that the character of the City's actions is invalid.

**IV.     Plaintiff Should Not Be Required To Post A Bond.**

Federal courts construing Federal Rule of Civil Procedure 65 permit a trial court to require no bond in a preliminary injunction matter. The trial judge has wide discretion in the manner of requiring security. *Appalachian Regional Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013). Moreover, "a court has no mandatory duty to impose a bond as a condition for issuance of injunctive relief." *NACCO Materials Handling Group, Inc. v. Toyota Materials Handling USA, Inc.*, 246 F.App'x 929, 952 (6th Cir. 2007), *citing Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978).

Here, there is no indication that Defendants will suffer any cognizable harm during the time that the preliminary injunction is in effect. This motion simply requires preservation of the constitutional rights Plaintiff is entitled to. Because Defendants will not be harmed by the issuance of a preliminary injunction, Plaintiff should not be required to post a bond.

## CONCLUSION

Therefore, based on the foregoing, Plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for a more deliberative investigation. Plaintiff respectfully requests that the Court grant this Motion for Preliminary Injunction to bar enforcement of Defendants' cease and desist order issued to Plaintiff. Plaintiff further requests the Court to consider this Motion without oral argument.

Dated: June 12, 2023

Respectfully Submitted,
DOUCET CO., L.P.A.

*/s/ Caleb J. Johnson*
Caleb J. Johnson (0102085)
655 Metro Place South, Suite 600

-19-

Dublin, OH 43017
PH: (614) 221-9800
Fax: (818) 638-5548
caleb@doucet.law
*Attorney for Plaintiff Michael Skilwies*


## CERTIFICATE OF SERVICE

I certify that on this 12th day of June, 2023, I caused this document to be electronically filed with the Clerk of Courts by using the ECF System, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, pursuant to Fed.Civ.R.P.5(b)(3).

I further certify that on June 12th, 2023, true and correct copies were sent to the following, via the method indicated:

Via U.S. Postal Service Certified Mail:


CITY OF HUBER HEIGHTS
6131 Taylorsville Rd.
Huber Heights, Ohio 45424

CITY OF HUBER HEIGHTS CITY
COUNCIL
6131 Taylorsville Rd.
Huber Heights, Ohio 45424

CITY OF HUBER HEIGHTS PLANNING
COMMISSION
6131 Taylorsville Rd.
Huber Heights, Ohio 45242

CITY OF HUBER HEIGHTS BOARD OF
ZONING APPEALS
6131 Taylorsville Rd.
Huber Heights, Ohio 45424

SERVE ALSO:
Pickrel, Schaeffer, and Ebeling
c/o: Gerald McDonald
2700 Kettering Tower
Dayton, OH 45423


*/s/ Caleb J. Johnson*
Caleb J. Johnson, Trial Counsel (0102085)