UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Michael Skilwies,**

      *Plaintiff,*

v.                                                  Case No. 3:23-cv-146
                                                      Judge Thomas M. Rose

**City of Huber Heights, et al.,**

      *Defendant.*

---

### ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION. (DOC. 3)

---

Pending before the Court is Motion for Preliminary Injunction by Plaintiff Michael Skilwies. (Doc. 3). Plaintiff asks the Court to prohibit Defendants from enforcing a cease and desist order against Plaintiff pending the outcome of this litigation. Plaintiff asserts he will be continuously and irreparably harmed, that Plaintiff is likely to succeed on the merits of his claim, and that an injunction would serve the public interest. Having considered Plaintiff's Motion and all other arguments and evidence submitted by the parties, the Court will **DENY** Plaintiff's motion.

## I. Background

Plaintiff Michael Skilwies owns approximately five acres of land at 9416 Taylorsville Road, Huber Heights, Ohio 45424. (See Doc. 18-1, Skilwies Aff., ¶ 2)[1]

---

1 Defendants point out that Plaintiff failed to file an affidavit in support of his motion for preliminary injunction. Plaintiff, contrary to Fed. R. Civ. P. 6(c)(2), filed an affidavit attached to his reply. See Doc. 18-1. This scenario is not unique, and courts have, when appropriate, exercised discretion to excuse the oversight:

> Kisaka's affidavit was filed with his reply, not with his moving papers. Rules 6(c)(2) of the Federal Rules of Civil Procedure requires that any affidavit supporting a motion be served with the motion. Kisaka's affidavit is thus untimely. The court has discretion to consider the affidavit, however, if the party "shows cause or excusable neglect for failing to comply with time provisions." *Savage v. Liberty Mut. Fire Ins. Co.*, Case No. 09–0080–EJL, 2009 WL 2245133, at *2 (D. Idaho July 24, 2009) citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896–97 (1990)). Kisaka did not seek leave to file a late affidavit nor has he shown excusable neglect.
>
> The affidavit is captioned "Affidavit in Support of Reply to Opposition to Motion for Preliminary Injunction." Had it contained information responsive to arguments defendants made in opposition to the motion, the affidavit might have been proper. See *Hammons v. Computer Programs and Systems, Inc*., Case No. 05–0613–WS–C, 2006 WL 3627117, at *14 (S.D. Ala. Dec. 12, 2006) ("But nothing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief" (citations omitted)). Kisaka cannot to rebut arguments found in defendants' opposition, however, because defendants did not make specific factual arguments. Instead, the affidavit was apparently filed in response to defendants' statement that Kisaka had not "filed *any* declaration to support any allegation of fact within the Motion." (Defs.' Opp. at 2). This is not an "invitation" for Kisaka to file a late affidavit, especially since the affidavit supports points made in his moving papers and does not rebut points made in opposition. See *Savage*, 2009 WL 2245133 at *2 (granting motion to strike an untimely affidavit since "regardless of defendant's alleged invitation of the Affidavit or the relevance of the Affidavit ... plaintiffs failed to file the Affidavit with their motion [ ], which motion the Affidavit allegedly supports. In fact, the Affidavit was filed more than one month after the Motion [ ] was filed and with Plaintiffs' Reply").
>
> Courts have striken affidavits filed late by the moving party because the non-moving party has had no opportunity to review or refute them. See *In re Stone*, 588 F.2d 1316, 1321 (10th Cir. 1978) (affidavits filed the day of a hearing were not timely); *Marshall Durbin Farms, Inc. v. National*

Plaintiff resides at this address with his wife and children. (See Id., ¶ 3). While Plaintiff's property is zoned for agricultural and low-density residential use, the surrounding area includes industrial facilities. (See Id., ¶ 4). For the past eleven years, Plaintiff has operated a diesel truck and heavy equipment repair business on his property. (See Id., ¶ 5). This is Plaintiff's sole employment. (See Id., ¶ 6). Also, some of Plaintiff's neighbors operate businesses on their properties. (See Id., ¶¶ 9-14). Some of Plaintiff's neighbors have received re-zoning or use-variances for businesses run on their property. (See Id., ¶ 15). However, it does not appear that any other of Plaintiff's neighbors have been required to obtain permits, use-variances, or re-zoning approval to operate their businesses on their respective properties. (See Id., ¶ 16). Rather, it is only Plaintiff's business that has been singled out and arbitrarily denied for rezoning or use-variance. (See Id., ¶ 17).

On September 9, 2020, the City of Huber Heights received a complaint that Plaintiff was operating a diesel truck repair business on his property. (Doc. 14-1, Def. Ex. A). Operation of such a business is not a permitted use of Plaintiff's property under City Zoning Code Section 1142 governing permitted uses on agriculturally zoned property.

---

*Farmers Organization, Inc.*, 446 F.2d 353, 355 (5th Cir. 1971) (reversing the entry of a preliminary injunction that relied, in part, on affidavits filed the same day as the hearing, since defendants were not given "adequate opportunity to prepare and present a factual showing controverting that of the plaintiffs"). Here, Kisaka's affidavit was untimely, and the court could strike it on that ground alone. Defendants had an opportunity to review the affidavit, however, and object to its contents, and did not do so. The court therefore exercises its discretion to consider the affidavit in deciding the motion.

*Kisaka v. Univ. of S. California*, No. 11-cv-1942, 2012 WL 12951434, at *3 n.39 (C.D. Cal. Aug. 3, 2012). This Court will do the same.

(Id.). After receiving the complaint, Plaintiff was contacted by the City and denied that he was running a business on his property. (Id.). At that the time, the matter was closed.

Less than a year later, the City of Huber Heights again received a complaint on August 2, 2021, that Plaintiff was operating a diesel truck repair business on his agriculturally zoned property in violation of zoning code section 1142. (Doc. 14-2, Ex. B).

In 2021, Plaintiff was contacted by the City of Huber Heights and told that his business operation is a non-farm related business, and, thus, does not conform to City zoning regulations. (See Doc. 18-1, Skilwies Aff., ¶ 10). Thereafter, based on the recommendation of the City, in preparation for applying for a use-variance and re-zoning, Plaintiff spent approximately $27,000.00 to widen and repave his driveway. (See Id., ¶ 11). Plaintiff then applied for a use-variance. (See Id., ¶ 12). The City Board of Zoning Appeals denied the application on October 6, 2021. (See Id., ¶ 13).

Following the denial of the variance application, the City re-inspected Plaintiff's property in November of 2021 and discovered that Plaintiff was still operating his diesel truck repair business in violation of the City's zoning code. (Doc. 14-2, Ex. B). As a result, Plaintiff was sent a letter on November 12, 2021, notifying him that if he did not cease operation of the truck repair business within 24 hours, the City would file charges in court for violation of zoning code section 1142. (Doc. 14-4. Ex. D).

After receiving the November 12, 2021 letter, Plaintiff contacted the City, acknowledged receipt of the letter and indicated that his attorney was working on completing an application for a lot-split and rezoning of the property. (Doc. 14-2, Ex. B).

The attorney indicated the application would be filed in "early 2022" and the City agreed to suspend the violation during the appellate process. (Doc. 14-2, Ex. B).

On March 28, 2022, Plaintiff filed an application for a proposed lot split and re-zoning. (See Doc. 18-1, Skilwies Aff., ¶ 14). This application proposed that approximately 3.55 acres of Plaintiff's property be re-zoned from "agricultural" to "planned industrial," which would allow Plaintiff to maintain his diesel truck and heavy equipment repair business on his property. (See Id., ¶ 15). The remainder of the five acres would be zoned residential. (See Id., ¶ 16).

Plaintiff attended a public hearing on July 11, 2022, where the City Council reviewed his application for re-zoning. Plaintiff made statements at this hearing. (See Id., ¶ 17). A staff member from the City Planning Commission presented at this hearing and noted that the City Planning Commission recommended that Plaintiff's re-zoning application be denied due to the following: (1) no public water or sewer available on the site, which may lead to well-water pollution; (2) the proposed lot split is not consistent with the comprehensive plan that the area should remain agricultural and low density residential; (3) the business is a nuisance due to excessive noise, fumes, odors, etc.; and, (4) additional concerns about the potential contamination of drinking water wells due to fluid leaks or spills. (See Id., ¶ 18). The staff member from the City Planning Commission did not present any evidence that Plaintiff's business had or would cause the stated concerns to manifest. (See Id., ¶ 19).

During this hearing, the City Planning Commission staff member noted that City's Board of Zoning Appeals has approved variance requests that do not conform to

the City's zoning ordinance. (See Id., ¶ 20). Plaintiff's re-zoning application was voted down by the City Council. (See Id., ¶ 21).

After Plaintiff's re-zoning application was voted down, a proposal to the City Council was submitted, by the City Planner, to amend the current zoning ordinance to allow for automotive and vehicle repair on properties zoned agricultural. (See Id., ¶ 22). Approval of this ordinance amendment by the City Council would have allowed Plaintiff to apply for a special use-variance for his property. That would have allowed Plaintiff to continue operation of his business. (See Id., ¶ 24). The proposed amendment was voted down by the City Council on February 13, 2023. (See Id., ¶ 25).

Plaintiff was not in attendance at the City Council meeting on February 13, 2023, because Plaintiff was initially told that the City Council vote on the proposed ordinance amendment would take place in March of 2023. (See Id., ¶ 26). Furthermore, Plaintiff was never personally notified of the date and time of the final City Council vote. (See Id., ¶ 27). The City did not provide Plaintiff with an explanation as to why his requests for re-zoning and use-variance were denied. (See Id., ¶ 28).

Plaintiff asserts that his business does not pose a risk of ground water contamination or any other environmental hazards. (See Id., ¶ 29). He claims the only work performed on diesel trucks and heavy equipment at his property is major engine or transmission repair work. (See Id. 30). Plaintiff does not perform oil changes or regular truck maintenance work on his property. (See Id., ¶ 31). Plaintiff adds that, all the work he performs on diesel trucks and heavy equipment at his property is done indoors on a concrete slab, which he believes ensures that pollutants or fluids do not seep into the ground. (See Id., ¶ 32). The City points out that the building in which Plaintiff performs

6

the diesel repairs does not meet the fire code with respect to such operations, as it does not have any fire hydrants. (Doc. 14-11, Ex. K)

According to Plaintiff, all fluids are caught in sealed drain pans and then pumped into a tank. (See Doc. 18-1, Skilwies Aff., ¶ 33). A waste oil company then periodically comes to drain the tank and haul away the waste. (See Id., ¶ 34). Plaintiff believes this mitigates any concerns of ground or well water contamination. (See Id., ¶ 35). Until recently, Plaintiff had never received any complaints from neighbors or the City concerning the operation of his business. (See Id., ¶ 36). Plaintiff asserts that any noise or annoyance of which a neighbor has complained do not emanate from the diesel trucks or heavy equipment from Plaintiff's business. (See Id., ¶ 37). Plaintiff believes his business fits within the general scheme of the area because Plaintiff's business is similarly situated to other businesses, industrial or otherwise, within the immediate area. (See Id., ¶ 38).

On February 16, 2023, the City of Huber Heights sent Plaintiff a letter that ordered Plaintiff to cease and desist operation of his business. (Id. ¶ 39). The letter notes that Plaintiff has exhausted all available administrative remedies. (See Id., ¶ 40). The letter gave Plaintiff 120 days, commencing March 1, 2023, to wind down his business. (See Id., ¶ 41). Plaintiff has filed a Complaint seeking redress for alleged violations of Plaintiff's Fifth and Fourteenth Amendment rights, and injunctive relief. (See Doc. 1, Complaint, ¶¶ 78-104). The parties have agreed to maintain the status quo, pending resolution of this motion. (Doc. 10)

**II. Law and Argument**

**A. Legal Standard for Constitutional Preliminary Injunction**

As noted by the Sixth Circuit:

> [P]reliminary injunctions are extraordinary and drastic remedies never awarded as of right. And that is why the plaintiff bears the burden to justify relief, even in First Amendment cases. A party seeking such relief must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.

*O'Toole v. O'Connor*, 802 F.3d 783, 788 (2015) (internal quotations and citations omitted).

In instances of alleged constitutional violations, the test for preliminary injunction is reduced to one factor, and the likelihood of success on the merits is determinative. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996); *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Moreover, preliminary injunctions in constitutional cases are typically determined by whether the plaintiff is likely to succeed on the merits of his claims. *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)).

"'[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)). In the instant case, there are no material facts at issue. Plaintiff believes the facts support an injunction; Defendants' retelling of essentially the same facts convinces them of the opposite. There is no need of an evidentiary hearing.

### B. Plaintiff's Equal Protection Claim

Plaintiff claims that he is entitled to equal protection under a "class of one" theory, claiming that the City treated him differently than others similarly situated to him without a rational basis for such difference in treatment. Class-of-one equal protection claims are ill-suited to circumstances concerning the exercise of governmental discretion. While the Supreme Court recognized the class-of-one theory in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), courts have recognized that it subsequently limited the scope of its applicability in *Enquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008):

> ...*Engquist's* rationale strongly suggests that the class-of-one theory is also unavailable in other contexts where government officials must make inherently subjective discretionary decisions, e.g., in its role as a sovereign and regulator.

*JDC Management, LLC v. Reich*, 644 F. Supp.2d 905, 920 (W.D. Michigan 2009).

As noted by the court in *JDC Management*:

> In the wake of *Olech*, lower courts have struggled to define the contours of class-of-one cases. All recognized that, *unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decisions made by state actors*. It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently than others, with regard to everything from zoning to licensing to speeding to tax evaluation. It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review. *This would constitute federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decision-making: a roll that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system*.

*JDC Management*, at 924, (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004) (emphasis in *JDC Management*)). In the wake of *Engquist*, class-of-one claims are inapposite in the context of controlling discretionary decision-making of law enforcement officers and city administrators in the enforcement of municipal ordinances. "Courts 'generally view' class-of-one claims with skepticism given the potential to 'provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Shavers v. Almont Twp.*, 832 F. App'x 933, No. 20-1291, 2020 WL 6156708, at *4 (6th Cir. Oct.21, 2020) (cleaned up) (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)). Prevailing on this theory presents a "heavy burden" for plaintiffs. *Loesel*, 692 F.3d at 462.

Skilwies fails to provide evidence of any similarly situated individuals. While he asserts that "two (and possibly more) of Plaintiff's neighbors, who own lots of similar size and character to Plaintiff's, have received either use-variance or re-zoning approval from the City" (Doc. 3, PageID 29), those businesses are a bed and breakfast and a directional drilling company— somewhat distinct from the on-site activities of Skilwies's diesel truck repair business. Without evidence of the similarity of these businesses, Plaintiff cannot establish that he is similarly situated, and this claim fails.

Even if Plaintiff had established similarly situated properties, he must not only identify similarly-situated individuals to whom he can be compared, but also "'(1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will.'" *Kesterson v. Kent State Univ.*, No. 5:16-cv-298, 2017 WL 995222, at *8 (N.D. Ohio Mar. 15, 2017) (quoting *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007)). While the zoning code was amended to make the bed and

breakfast a special use permitted by variance in the district, (Doc. 14-9, ex. I, at 5-6.), Huber Heights received multiple complaints within a year's time that Plaintiff was violating the City zoning ordinance by operating a diesel repair business. The City investigated the matter and determined that Plaintiff was operating a business not permitted on his agriculturally zoned property. As a result, the City ultimately issued a cease and desist notice to Plaintiff. The City was well within its right to enforce the zoning code in the manner in which it did. (Doc. 14-5, Ex. E). For these reasons, Plaintiff is unlikely to achieve success on the merits and Plaintiff's motion for preliminary injunction will be denied.

### C. Due Process Claims

#### 1. Substantive Due Process

Defendant reminds the Court, "The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Conn*., 302 U.S. 319, 325, 582 (1937)). However, "[l]iberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 392 (1937) (quotations omitted). The Supreme Court has recognized a sometimes incrementally expanding, sometimes contracting category of fundamental rights lurking in the shadows of the Constitution. See *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965) (citing *Poe v. Ullman*, 367 U.S. 497, 516-522 (1961) (dissenting opinion)). Indeed, the search to define this implied right goes back to before the civil war. See *Causeway Med. Suite v. Ieyoub*, 109 F.3d 1096, 1114 (5th Cir. 1997) (citing *Dred Scott v. Sanford*, 60 U.S. (How.) 393, 450, 15 L.Ed. 691 (1856) (interpreting the Fifth Amendment to say that "an act of Congress

which deprives a citizen of the United States of his liberty or property, merely because he came himself or brought his property into a particular Territory of the United States, and who had committed no offence against the laws, could hardly be dignified with the name of due process of law.")).

The Sixth Circuit has determined that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Richardson v. Township of Brady*, 218 F.3d 508, 512 (6th Cir. 2000). While substantive due process has protected a host of asserted rights over the decades since its conception, *Causeway Med. Suite*, 109 F.3d at 1114, the Supreme Court has recently instructed that any right only implicitly protected by the Constitution must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted in *Dobbs*)).

While "nothing in [*Dobbs*] should be understood to cast doubt on precedents that do not concern abortion," *Dobbs*, 142 S. Ct. at 2277-78, 2281, zoning has only existed a few decades longer than the Court's recognition of abortion rights, *Roe v. Wade*, 410 U.S. 113 (1973), hardly "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Dobbs*, at 2242. For present purposes, however, the Court will abide by the dictum that the "deeply rooted" test does not cast doubt on precedents that do not concern abortion.

Thus, for now, "[a] local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose." *Richardson*, 218 F.3d at 513. "Courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally

related to legitimate state concerns." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981); *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063–64 (2d Cir. 1989) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)) ("Generally a municipal zoning ordinance is presumed to be valid and will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective").

"[T]o state a substantive due process claim in the context of a zoning case, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action." *Hearns Concrete Construction Co. v. City of Ypsilanti*, 241 F. Supp.2d 803, 812 (E.D. Mich. 2003).

Here, Plaintiff does not have the constitutional right to operate a diesel truck repair business on property zoned for agricultural use. The City zoning code, section 1142, prohibits that type of business use on the property. (Doc. 14-10, Ex. J). Plaintiff has the right to eat, sleep and conduct other daily activities on the property, but he does not have a constitutionally protected right to violate the City zoning code. In the absence of a constitutionally protected right, the City cannot deprive Plaintiff of a constitutionally protected right.

Even if there were a constitutionally protected right, the City received a complaint, investigated the complaint, reviewed the complaint, allowed plaintiff to appeal and apply for a variance, evaluated the application, allowed Plaintiff to speak and present on his own behalf, and ultimately voted to deny the application. In doing so, the City Planner noted that the Lot Frontage did not conform to zoning code regulations, that no public water or sewer were available to the property which failed to meet section 1109.17(i) of the subdivision regulations, that it was poor practice to encourage the creation of non-conforming lots, that the City's

comprehensive plan indicated that the area in which his property is located should be agricultural/low density residential and that the proposed rezoning is not consistent with the comprehensive plan. (Doc. 14-5, Ex. E, at 2-4). There is no inference of arbitrary or capricious action on behalf of Defendants. Indeed, "although government action may certainly shock the conscience or violate substantive due process without a liberty or property interest at stake in the context of a discretionary zoning decision, government action will not shock the conscience unless the arbitrary and capricious action touches on a protectable interest." *EJS Prop., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012).

Plaintiff asserts a protectable interest in "a fundamental right to engage in the common occupations of life on his property." (Doc. 3, PageID 33). Plaintiff marks the centennial of *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), by citing to it for this proposition. In upholding the right to instruct one's children to read and write German, *Meyer* does recite this as a fundamental right, citing, inter alia, *Slaughter-House Cases*, 16 Wall. 36, 21 L. Ed. 394 (1872); *Butchers' Union Co. v. Crescent City Co.*, 111 U. S. 746 (1884); and *Lochner v. New York*, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133 (1905). It is worth noting that the *Lochner*-era cases protecting a due process theory of freedom of contract, were expressly abrogated in *Lincoln Fed. Labor Union No. 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 536-37 (1949), and other earlier cases cited in that opinion. The Court is unaware of current caselaw supporting a substantive due process protection of a right formulated as broadly as Plaintiff propounds. Because Plaintiff has failed to demonstrate any likelihood of success on his substantive due process claim, his motion will be denied.

**2. Procedural Due Process**

Plaintiff also contends that the City violated his procedural due process by incorrectly informing him of the date the City Council was to vote to amend the zoning ordinance in a manner that would have allowed him to apply for a special-use variance for his property. (Doc. 1, PageID 13, Complaint at ¶ 90). To establish a procedural due process claim, a plaintiff must demonstrate: (1) a liberty or property interest protected by the due process clause; (2) a deprivation of that protected interest within the meaning of the due process clause; and (3) the defendant's failure to afford adequate procedural rights prior to the deprivation. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Plaintiff contends that he had a right to be personally correctly notified of the date and time of the City Council's vote on February 13, 2023. (Doc. 3, PageID 36). "Plaintiffs' argument that they were denied a meaningful hearing is unpersuasive. Although plaintiffs did not fully participate at every stage of [the] application process, it is undisputed that public comment was allowed on [the] application…at which it was initially considered." *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Plaintiff was afforded the process due to protect their property rights and the City conformed to each of the state and city procedural requirements.

Plaintiff and his wife attended both the planning commission meeting in May 2022 and presented and spoke at the City Council's public hearing on July 11, 2022. (Doc. 14-5, Ex. E and Doc. 14-7, Ex. G). Plaintiff was aware of those public meetings and had the same opportunity to track the dates, time and agenda of all City Council meetings, including the meeting on February 13, 2023, which are accessible on the City's website. See, https://www.hhoh.org/279/Council

Further, the item voted on at the February 13, 2023, council meeting was not the rezoning application of Plaintiff, but an amendment to a general ordinance of the zoning code regarding automotive/vehicle repair facilities. (Doc. 14-9, Ex. I, at 6). A state has no "federal due process

15

obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99, 111 (1995); see also *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). Plaintiff's motion will be denied as regards procedural due process.

### D. Fifth Amendment Taking Claim

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017); see also *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994) (Takings Clause applies to the States via the Fourteenth Amendment). There are two basic types of takings claims. First, there is the quintessential takings claim based on "direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). "[W]here government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." *Id.* at 538. Second, there are so-called "regulatory takings," which concern land-use regulations. *Id*. A "total regulatory taking" occurs where a land-use regulation "deprives [the] land of all economically beneficial use," leaving the land "economically idle." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 1026–27 (1992). Plaintiff admits he retains some use.

But even where a regulation allows for some economically beneficial use of the property in question, "a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr*, 137 S. Ct. at 1943 (quoting *Palazzolo v. Rhode Island*, 533 U.S.

606, 617 (2001)); see also *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

A government cannot commit a taking if "the proscribed use interests were not part of [the owner's] title to begin with." *Lucas*, 505 U.S. at 1027. Thus, the deprivation of the right to use property for a particular purpose is not a "'taking' if that right was never a part of the titleholder's bundle of rights to begin with." *Andrews v. City of Mentor, Ohio*, 11 F.4th 462, 472 (6th Cir. 2021). It is undisputed that Skilwies's property has been zoned agricultural since he acquired it. Property in Huber Heights zoned agricultural is not intended for the operation of a diesel repair shop. Further, owners may request a use variance, but this is not granted as of right. When Skilwies purchased the property in question, its bundle of rights did not include the right he now claims has been taken from him. Therefore, under *Lucas* and *Andrews*, denial of the use variance application was not a taking. Were the application denied arbitrarily or capriciously, Plaintiff would have a procedural due process claim. Because no taking has occurred Plaintiff's motion will be denied.

### III. Conclusion

Because Plaintiff has not established a likelihood of success on the merits, Motion for Preliminary Injunction by Plaintiff Michael Skilwies, (doc. 3), is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, August 31, 2023.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE