UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Michael Skilwies,**

   *Plaintiff,*

v.                   Case No. 3:23-cv-146
                    Judge Thomas M. Rose

**City of Huber Heights, et al.,**

   *Defendant.*

---

**ENTRY AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS CITY OF HUBER HEIGHTS BOARD OF ZONING APPEALS, CITY OF HUBER HEIGHTS CITY COUNCIL, CITY OF HUBER OHIO, CITY OF HUBER HEIGHTS PLANNING COMMISSION (DOC. 23) AND TERMINATING CASE.**

---

   Pending before the Court is Motion for Judgment on the Pleadings by Defendants City of Huber Heights Board of Zoning Appeals, City of Huber Heights City Council, City of Huber Heights, and City of Huber Heights Planning Commission. (Doc. 23.) Therein, Defendants request that the Court dismiss all of Plaintiff Michael Skilwies's claims against them in their entirety.

Plaintiff sued, asserting a violation of his Equal Protection and Due Process rights under the Fourteenth Amendment and further asserting that he has been subjected to a regulatory taking in violation of the Fifth Amendment. (Doc. 1.) In his response to Defendants' motion, Plaintiff "disagrees with Defendant's arguments to dismiss his Substantive and Procedural Due Process, and Fifth Amendment Taking claims, if only to make an appellate record." (Doc. 26, PageID 222-23 (citing *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009).) Plaintiff concedes, "Defendant appears to cite to the correct state of the law. Plaintiff respectfully disagrees that such law should stand. Plaintiff adamantly contends that his Fourteenth Amendment Equal Protection claim must survive the instant motion, though the Court must allow discovery on this claim…." (*Id.*) The Court will thus confine its analysis to Plaintiff's Fourteenth Amendment Equal Protection claim.

**I.    Background**

Plaintiff Michael Skilwies owns approximately five acres of land at 9416 Taylorsville Road, Huber Heights, Ohio 45424. (*See* Doc 1, Complaint, ¶ 19). Plaintiff, and his wife and children reside at this address. (*See Id.*, ¶ 20). While Plaintiff's property is zoned for agricultural and low-density residential use, the surrounding area includes many industrial facilities. (*See Id.*, ¶¶ 21-24).

For approximately the past twelve years, Plaintiff has operated a diesel vehicle repair business on his property. (*See Id.*, ¶ 25). This is Plaintiff's sole employment. (*See Id.*, ¶ 26). Many of Plaintiff's neighbors operate businesses on their properties. (*See Id.*, ¶¶ 29-34). Plaintiff alleges two neighbors have received re-zoning or use-variances for businesses run on their property. (*See Id.*, ¶ 35).

On September 9, 2020, the City of Huber Heights received a complaint that Plaintiff was operating a diesel truck repair business on his property. (Doc. 14-1).[1] Operation of such a business is not a permitted use of Plaintiff's property under City Zoning Code § 1142 governing permitted uses on agriculturally zoned property. (*Id.*). After receiving the complaint, the City contacted Plaintiff, who denied that he was running a business on his property. (*Id.*). At that time, the matter was closed.

Less than a year later, the City of Huber Heights again received a complaint on August 2, 2021, decrying that Plaintiff was operating a diesel truck repair business on his agriculturally zoned property in violation of zoning code § 1142. (Doc. 14-2, Ex. B). The City contacted Plaintiff and told him that his business operation is a non-farm related business, and, thus, does not conform to City zoning regulations. (*See* Doc. 18-1, Skilwies Aff., ¶ 10). Thereafter, based on the recommendation of the City, in preparation for applying for a use-variance and re-zoning, Plaintiff spent approximately $27,000.00 to widen and repave his driveway. (*See Id.*, ¶ 11). Plaintiff then applied for a use-variance. (*See Id.*, ¶ 12). The City Board of Zoning Appeals denied the application on October 6, 2021. (*See Id.*, ¶ 13).

Following the denial of the variance application, the City re-inspected Plaintiff's property in November of 2021 and discovered that Plaintiff was still operating his diesel truck repair business in violation of the City's zoning code. (Doc. 14-2, Ex. B). As a result, the City sent Plaintiff a letter on November 12, 2021, notifying him that if he did not cease operation of the

---

1 In evaluating a motion under Federal Rule of Civil Procedure 12(c), although "'the court primarily considers the allegations in the complaint, ... matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)

truck repair business within 24 hours, the City would file charges in court for violation of zoning code section 1142. (Doc. 14-4. Ex. D).

After receiving the November 12, 2021, letter, Plaintiff contacted the City, acknowledged receipt of the letter, and indicated that his attorney was working on completing an application for a lot-split and rezoning of the property. (Doc. 14-2, Ex. B). The attorney indicated the application would be filed in "early 2022" and the City agreed to suspend the violation during the appellate process. (Doc. 14-2, Ex. B).

On March 28, 2022, Plaintiff filed an application for a proposed lot split and re-zoning. (*See* Doc. 18-1, Skilwies Aff., ¶ 14). This application proposed that approximately 3.55 acres of Plaintiff's property be re-zoned from "agricultural" to "planned industrial," which would allow Plaintiff to maintain his diesel truck and heavy equipment repair business on his property. (*See Id.*, ¶ 15). The remainder of the five acres would be zoned residential. (*See Id.*, ¶ 16).

Plaintiff attended a public hearing on July 11, 2022, where the City Council reviewed his application for re-zoning. Plaintiff made statements at this hearing. (*See Id.*, ¶ 17). A staff member from the City Planning Commission presented at this hearing and noted that the City Planning Commission recommended that Plaintiff's re-zoning application be denied due to the following: (1) no public water or sewer available on the site, which may lead to well-water pollution; (2) the proposed lot split is not consistent with the comprehensive plan that the area should remain agricultural and low density residential; (3) the business is a nuisance due to excessive noise, fumes, odors, etc.; and, (4) additional concerns about the potential contamination of drinking water wells due to fluid leaks or spills. (*See Id.*, ¶ 18). The staff member from the City Planning Commission did not present any evidence that Plaintiff's business had or would cause the stated concerns to manifest. (*See Id.*, ¶ 19).

During this hearing, the City Planning Commission staff member noted that the City's Board of Zoning Appeals has approved variance requests that do not conform to the City's zoning ordinance. (*See Id.*, ¶ 20). Plaintiff's re-zoning application was voted down by the City Council. (*See Id.*, ¶ 21).

After Plaintiff's re-zoning application was voted down, the City Planner submitted a proposal to the City Council to amend the current zoning ordinance to allow for automotive and vehicle repair on properties zoned agricultural. (*See Id.*, ¶ 22). Approval of this ordinance amendment by the City Council would have allowed Plaintiff to apply for a special use-variance for his property. (*See Id.*, ¶ 23). That would have allowed Plaintiff to continue operation of his business. (*See Id.*, ¶ 24). The City Council voted down the proposed amendment on February 13, 2023. (*See Id.*, ¶ 25).

Plaintiff was not in attendance at the City Council meeting on February 13, 2023, because Plaintiff was initially told that the City Council vote on the proposed ordinance amendment would take place in March of 2023. (*See Id.*, ¶ 26). Furthermore, Plaintiff was never personally notified of the date and time of the final City Council vote. (*See Id.*, ¶ 27). The City did not provide Plaintiff with an explanation as to why his requests for re-zoning and use-variance were denied. (*See Id.*, ¶ 28).

Plaintiff alleges that his business does not pose a risk of ground water contamination or any other environmental hazards. (*See Id.*, ¶ 29). He claims the only work performed on diesel trucks and heavy equipment at his property is major engine or transmission repair work. (*See Id.* 30). Plaintiff does not perform oil changes or regular truck maintenance work on his property. (*See Id.*, ¶ 31). Plaintiff adds that all the work he performs on diesel trucks and heavy equipment at his property is done indoors on a concrete slab, which he believes ensures that pollutanting

5

fluids do not seep into the ground. (*See Id.*, ¶ 32). The City points out that the building in which Plaintiff performs the diesel repairs does not meet the fire code with respect to such operations, as it does not have any fire hydrants. (Doc. 14-11, Ex. K)

According to Plaintiff, all fluids are caught in sealed drain pans and then pumped into a tank. (*See* Doc. 18-1, Skilwies Aff., ¶ 33). A waste oil company then periodically comes to drain the tank and haul away the waste. (*See Id.*, ¶ 34). Plaintiff believes this mitigates any concerns of ground or well water contamination. (*See Id.*, ¶ 35). Until recently, Plaintiff had never received any complaints from neighbors or the City concerning the operation of his business. (*See Id.*, ¶ 36). Plaintiff asserts that any noise or annoyance of which a neighbor has complained do not emanate from the diesel trucks or heavy equipment from Plaintiff's business. (*See Id.*, ¶ 37). Plaintiff believes his business fits within the general scheme of the area because Plaintiff's business is similarly situated to other businesses, industrial or otherwise, within the immediate area. (*See Id.*, ¶ 38).

On February 16, 2023, the City of Huber Heights sent Plaintiff a letter that ordered Plaintiff to cease and desist operation of his business. (*Id.* ¶ 39). The letter notes that Plaintiff has exhausted all available administrative remedies. (*See Id.*, ¶ 40). The letter gave Plaintiff 120 days, commencing March 1, 2023, to wind down his business. (*See Id.*, ¶ 41). Plaintiff filed the Complaint initiating this case, seeking redress for alleged violations of his Fifth and Fourteenth Amendment rights and injunctive relief. (*See* Doc. 1, Complaint, ¶¶ 78-104). The Court denied Plaintiff's Motion for a Preliminary Injunction on August 31, 2023. (Doc 19). Now Defendant has filed a motion seeking judgement on the pleadings on all claims.

**II.     Legal Standard**

Rule 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(h)(2), a motion for judgment on the pleadings is analyzed using the same standard of review as a motion to dismiss under Rule 12(b)(6). *Hunter v. Ohio Veterans Home*, 272 F.Supp.2d 692 (N.D. Ohio Jun 26, 2003); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer. *Hunter*, at 693.

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (*quoting* Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* (*quoting Scheuer v. Rhodes*, 416 U.S. 232 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact),"

7

the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability but asks for more than a sheer possibility that a defendant has acted unlawfully). Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged).

When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Federal Rule Civil Procedure 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]…that the pleader is entitled to relief.'"). Although "the court primarily considers the allegations in the complaint, ... matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 514 (E.D. Mich. 2021).

**III. Analysis**

Plaintiff claims that he is entitled to equal protection under a "class of one" theory, claiming that the City treated him differently than others similarly situated to him without a rational basis for such difference in treatment. (doc. 26, PageID 229.) Class-of-one equal protection claims are ill-suited to circumstances concerning the exercise of governmental discretion. While the Supreme Court recognized the class-of-one theory in *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000), courts have recognized that it subsequently limited the scope of its applicability in *Enquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008):

> ...*Engquist's* rationale strongly suggests that the class-of-one theory is also unavailable in other contexts where government officials must make inherently subjective discretionary decisions, e.g., in its role as a sovereign and regulator.

*JDC Management, LLC v. Reich*, 644 F. Supp. 2d 905, 920 (W.D. Mich. 2009).

As noted by the court in *JDC Management*:

> In the wake of *Olech*, lower courts have struggled to define the contours of class-of-one cases. All recognized that, *unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision[] made by state actors*. It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently than others, with regard to everything from zoning to licensing to speeding to tax evaluation. It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review. *This would constitute federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decision-making: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system*.

*JDC Management*, at 924, (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004) (emphasis in *JDC Management*)). In the wake of *Enquist*, class-of-one claims are inapposite in the context of controlling discretionary decision-making of law enforcement officers and city administrators in the enforcement of municipal ordinances. "Courts 'generally view' class-of-one claims with skepticism given the potential to 'provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Shavers v. Almont Twp.*, 832 F. App'x 933, 937 (6th Cir. Oct. 21, 2020) (cleaned up) (quoting *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012)). Prevailing on this theory presents a "heavy burden" for plaintiffs. *Loesel*, 692 F.3d at 462.

Skilwies fails to allege any similarly situated individuals. He does assert that "two (and possibly more) of Plaintiff's neighbors, who own lots of similar size and character to Plaintiff's, have received either use-variance or re-zoning approval from the City." (Doc. 3, PageID 29). However, those businesses are a bed-and-breakfast and a directional drilling company—somewhat distinct from the on-site activities of Skilwies's diesel truck repair business. (*See Id.*) The first is inherently indistinguishable from low-density residential use, while the other performs his work elsewhere. Without allegations of similarity situated businesses, Plaintiff cannot establish that he was unconstitutionally discriminated against, and his claim fails.

Even if Plaintiff had established similarly situated properties, he must not only identify similarly-situated individuals to whom he can be compared, but also "'(1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will.'" *Kesterson v. Kent State Univ.*, No. 5:16-cv-298, 2017 WL 995222, at *8 (N.D. Ohio Mar. 15, 2017) (quoting *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007)). While the zoning code was amended to make the bed and

breakfast a special use permitted by variance in the district, (Doc. 14-9, Ex. I, at 5-6.), Huber Heights received multiple complaints within a year's time that Plaintiff was violating the City zoning ordinance by operating a diesel repair business. (Doc. 14-1, 14-2.)

In this case, Plaintiff's Complaint establishes that the City of Huber Heights investigated the matter and determined that Plaintiff was operating a business not permitted on his agriculturally zoned property. As a result, the City ultimately issued a cease and desist notice to Plaintiff. The City was well within its right to enforce the zoning code in the manner in which it did and as a result, Plaintiff's Equal Protection claim will be dismissed.

## IV. Conclusion

Because Plaintiff has not alleged facts that would entitle him to relief, Defendants' Motion for Judgment on the Pleadings (Doc. 23) is **GRANTED**. The Clerk is **ORDERED** to **TERMINATE** the instant case from the dockets of the District Court of the United States for the Southern District of Ohio, Western Division at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, April 16, 2024.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE